UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
ONYINYE JIDEANI,              )
                              )
            Plaintiff,        )
                              )
     v.                       )     Civil Action No. 12-1120 (BAH)
                              )
WASHINGTON METROPOLITAN       )
AREA TRANSIT AUTHORITY,       )
                              )
            Defendant.        )
_____)

**MEMORANDUM OPINION**

This matter is before the Court on Defendant WMATA's Motion for Summary Judgment [ECF No. 32], and Plaintiff's Motion to Grant Continuance, Extension of Time on Interrogatory and Deposition [ECF No. 30], Motions for an Order Compelling Disclosure and Discovery Response Pursuant to Federal Rule of Civil Procedure 37 [ECF No. 34], and Motion to Obtain Response from the Judge on Why It Has Not Issued a Ruling or an Order on Motion for Summary Judgment and Plaintiff's Opposition with Accompanying Affidavit Filed Thereto [ECF No. 46]. For the reasons discussed below, WMATA's motion will be granted and Plaintiff's motions will be denied.

I. BACKGROUND

A. *Plaintiff's Allegations*[1]

According to Plaintiff, she began her employment at WMATA as a contractor in September of 2007. Am. Compl. at 1.[2] She became a permanent employee in March 2008, *id.*, as an administrative assistant in WMATA's Office of Long Range Planning. Mem. of P. & A. in Supp. of Def. WMATA's Mot. for Summ. J. ("Def.'s Mem."), Aff. of Thomas Harrington ("Harrington Aff.") ¶ 3. Thereafter, she allegedly "was retaliated against by the Human Resource department in the form of gossip and defamation." Am. Compl. at 2. For example, she claimed to have been "investigated by Human Resource in an attempt to retrieve incriminating information that will humiliate and defame [her] character." *Id.* Plaintiff heard other employees discussing "personal information such as . . . years in college and financial status," and other alleged "rumors" about her. *Id.* She allegedly was subjected to unspecified verbal insults, harassment, and attempts by other employees "to humiliate [her] and defame [her] character" and to "hinder [her] progress/promotion within the company." *Id.* at 2. Her efforts at securing "employment outside of WMATA" allegedly were unsuccessful, she claimed, after prospective employers received "unfavorable employment verification by WMATA['s] Human Resource department." *Id.* at 3.

---

[1] Plaintiff's vague and fanciful allegations of conspiracy to commit murder, invasion of privacy, food poisoning, medical malpractice and the like, *see* Am. Compl. at 11-12, are "'so attenuated and unsubstantial as to be absolutely devoid of merit,'" *Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974) (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 (1904)), that the Court summarily dismisses them for lack of subject matter jurisdiction. *See Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009).

[2] The Court granted Plaintiff's unopposed "Motion[] to Amend Pleading" [ECF No. 21] by minute order dated March 20, 2013, and refers to the Amended Pleading [ECF No. 26] as "Am. Compl."

"On or around September 2011, [Plaintiff] contacted the Equal Employment Opportunity Commission (EEOC) to investigate [her] allegations and seek compliance with the law against [WMATA] after consulting with fellow co-workers who confirmed that they too heard personal information and rumors" about her. *Id.* She filed a charge of discrimination on October 17, 2011. *Id.* She alleged acts of retaliation occurring between March 1, 2008 and October 17, 2011:

> On or around November 2007, I was hired by [WMATA] as an Administrative assistant . . . . On or around March 2008, I reported to an HR Representative of WMATA that another employee had cheated on an exam we needed to take. After reporting the incident, I have been subject to gossip and defamation of character. I have also gotten several recommendations for advancement but have not been allowed to advance my position. On or around September of 2011, I interviewed for different positions in different companies and have favorable interviews; however, I was not selected. I believe that my employer gave unfavorable references in retaliation for my earlier complaint. I believe I have been discriminated against because of retaliation in violation of Title VII . . . .

Compl., Ex. 1 (Charge of Discrimination, Charge No. 570-2012-00092) (exhibit number designated by the Court).

After the filing of this charge of discrimination, Plaintiff allegedly "was subject[ed] to an even greater harassment; threats of violence with the intent to kill as a result of the illegal criminal acts that had [befallen her]; an economic and non-economic harm as a result of the illegal civil acts against [her], and violation of [her] legal or constitutional rights." Am. Compl. at 3. For example, Plaintiff allegedly "was overcome by harsh, hostile, and aggressive work environment in which [she] was followed and intimidated on several occasions by Transit police when riding or serving as Metro Information Person" at various subway stations. *Id.* at 4. In addition, transit police allegedly followed her and monitored her at work; her work duties were

3

increased; a salary adjustment was rescinded; and she "was constantly being harassed to provide documentation for vacation and medical leaves." *Id.* The EEOC closed its file on Plaintiff's charge of discrimination upon its conclusion that the information obtained established no violation of the relevant statute. Compl., Ex. 2 (Dismissal and Notice of Rights, EEOC Charge No. 570-2012-00092 dated November 16, 2011) (exhibit number designated by the Court). WMATA terminated her employment on June 14, 2012. Am. Compl. at 5.

After her termination, Plaintiff filed a second charge of discrimination which in relevant part stated:

> On or about October 2011, I filed an EEOC complaint alleging a violation of Title VII of the Civil Rights Act of 1964, as amended. After filing the complaint I have been subjected to harassment by Tom Harrington, Director/Supervisor. On or about November 2011, my duties were changed to include more tasks . . . .

Def.'s Mem., Ex. 3 (Charge of Discrimination, Charge No. 570-2012-00454 dated June 18, 2012); *see* Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. (Pl.'s Mem.") [ECF No. 38] at 3. Below this typewritten statement, Plaintiff added a handwritten statement which read:

- ∗ My duties were changed to include more tasks and the grading scale was altered.

- ∗ Salary adjustment for performance and equity adjust[ment] per memo dated 1/9/12 on my behalf was retracted

- ∗ Was terminated on March 13, 2012

Def.'s Mem., Ex. 3. Plaintiff has not received a right-to-sue letter from the EEOC with respect to this June 18, 2012 charge of discrimination. Am. Compl. at 5; *see* Def.'s Mem. at 3.

4

### B. *WMATA's Representations*

According to WMATA, between September 2011 and March 2012, "Plaintiff missed a substantial amount of time from work related to illness or other unscheduled leave." Harrington Aff. ¶ 4. Because of these absences, Plaintiff was placed on administrative leave on March 13, 2012 pending clearance by WMATA's Medical Services Branch. *Id.*; *see id.*, Ex. A (Letter to Plaintiff from Tom Harrington, Director, Office of Long Range Planning, dated March 18, 2012). "The Medical Services office made numerous requests to Plaintiff for satisfactory medical documentation justifying [her] repeated absences," but "[t]he minimal documentation provided by Plaintiff was deemed inadequate." *Id.* ¶ 5. Because Plaintiff's submissions were insufficient, WMATA took "disciplinary action and [her] status was changed to 'Leave Without Pay'" on March 28, 2012. *Id.*, Ex. B (Letter to Plaintiff from Tom Harrington dated June 14, 2012) at 1. Plaintiff was directed to undergo a medical examination in May 2012, and twice she failed to appear as scheduled. Harrington Aff. ¶ 5. Effective June 14, 2012, WMATA terminated Plaintiff's employment because of "her failure to comply with the directives of the Medical Services office." *Id.* ¶ 6; *see id.*, Ex. B. WMATA's affiant averred that the decision to terminate Plaintiff's employment was not related to her October 17, 2011 charge of discrimination. *Id.* ¶ 6.

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*[3] Am. Compl. at 1. She demands a declaratory judgment and monetary damages. *See id.* at 11-12.

## II. DISCUSSION

### A. *Plaintiff's Requests for Discovery Will Be Denied*

By minute order on August 16, 2012, the Court set an initial scheduling conference for September 7, 2012 at 9:30 a.m. Plaintiff did not appear. The Court directed the parties to meet and confer and to file a joint report pursuant to Local Civil Rule 16.3. Based on a joint report approved by Plaintiff on September 14, 2012 [ECF No. 13-2] and filed with the Court on September 17, 2012, by minute order on October 1, 2012, the Court issued a scheduling order pursuant to which (1) initial disclosures were waived, (2) all discovery closed on March 19, 2013 and (3) dispositive motions were due on April 19, 2013.

On March 11, 2013, Plaintiff served WMATA a set of interrogatories and requests for production of documents. Motions for an Order Compelling Disclosure and Discovery Response Pursuant to Federal Rule of Civil Procedure 37 ("Pl.'s Mot. to Compel Discovery") [ECF No.

---

[3] Plaintiff's claims "under the Fourth, Fifth, Ninth, Eleventh, Thirteenth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. [§§] 1983, 1985 and 1986, and the District of Columbia Human Rights [Act (DCHRA), *see* D.C. Code 1-2501 *et seq.*,]" Am. Compl. at 1, are summarily dismissed. WMATA is not subject to suit under either 42 U.S.C. § 1983 or the DCHRA. *See Headen v. Wash. Metro. Area Transit Auth.*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010) ("WMATA's sovereign immunity means that the Authority cannot be sued under § 1983."); *Taylor v. Wash. Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000) ("It is well-established that WMATA is not subject to the DCHRA because WMATA is an interstate compact agency and instrumentality of three separate jurisdictions."); *Lucero-Nelson v. Wash. Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 7-8 (D.D.C. 1998) (dismissing DCHRA and constitutional claims).

34] at 1.  WMATA objected on the ground that these discovery requests were untimely; only if Plaintiff had served them on or before February 15, 2013, would WMATA have had a full 30-day period to respond as Rules 33(b)(2) and 34(b)(2)(A) provide.  Def. WMATA's Opp'n to Pl.'s Mot. for an Order Compelling Disclosure and Discovery Response [ECF No. 37] at 1.

Plaintiff repeatedly has objected to the scheduling order for its alleged failure to comply with Rule 26(f) of the Federal Rules of Civil Procedure and Local Civil Rule 16.3.  For example, on April 1, 2013, Plaintiff sought a "continuance or extension of time on requests for Interrogatories and Production of Documents due to failure in the Court's October 1, 2012 scheduling order to stipulate a designated time frame for discovery plan under Rule 26(f)(3) [of the] Federal Rule[s] of Civil Procedure, and failing to state [Plaintiff's] objection for waiving initial disclosure[s]."  Motion to Grant Continuance, Extension of Time on Interrogatory and Deposition [ECF No. 30] ("Mot. for Continuance").  The Court denied the request by minute order on April 2, 2013 because Plaintiff had not offered good cause for a modification as Rule 16(b)(4) requires.  Undaunted, on April 11, 2013, Plaintiff again moved to modify the scheduling order due to the Court's alleged failure to "make or arrange for disclosures required by Rule 26(a)(1) . . . and . . . [d]evelop a discovery plan pursuant to Rule 26(f) . . . that indicates the parties' views and proposals" on such matters.  Motion to Modify Schedule Pursuant to Rule 16(b)(4) of the Federal Rule[s] of Civil Procedure [ECF No. 31] at 1-2.  The Court denied this motion, too, because Plaintiff had not shown good cause.

On April 19, 2013, the same date WMATA filed its motion for summary judgment, Plaintiff sought an order compelling WMATA not only to respond to her "written interrogatories and request for production of documents submitted on March 11, 2013," but also to provide her

7

with information ordinarily made available by the parties "without awaiting [a] discovery request." Pl.'s Mot. to Compel Discovery at 2. In other words, weeks after discovery closed, Plaintiff sought the initial disclosures which had been waived pursuant to the parties' joint report and the October 1, 2012 scheduling order. *See id.* (quoting Fed. R. Civ. P. 26(a)(1)).

Plaintiff claimed not to have understood "that a request for Interrogatories and Deposition was to be made to Defendant WMATA particularly with the nature of this case, and that such process was a part of Discovery." Plaintiff in Pro Se Onyinye Jideani's Court Ordered Affidavit in Support of its Opposition to Deny Defendant's Motion for Summary Judgment ("Pl.'s Aff.") [ECF No. 43] at 3 (page numbers designated by ECF). She attributed her lack of understanding to the Court's failure to order the parties to prepare a discovery plan. *See id.* at 4; *see* Mot. for Continuance at 3-4. Had there been such a plan, Plaintiff purportedly "would have timely served . . . her request for Interrogatories and Deposition." Pl.'s Aff. at 4. She faulted the Court which "should have picked up on" this "technicality." *Id.* Left without discovery responses from WMATA, Plaintiff asserted that she is unable to respond adequately to its motion for summary judgment. *See id.* at 2-5; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [ECF No. 38] at 1-3.[4]

---

[4] Plaintiff has asserted that "[p]ivotal information and material facts relating to discovery with respect to the claims laid forth in this case were intentionally omitted, not disclosed or made unavailable to [her]," and she claims that she "cannot properly present facts essential to justify [her] opposition pursuant to Fed. R. Civ. P. 56(d)." Pl.'s Opp'n ¶ 2. The Court treated this assertion as a motion under Rule 56(d) of the Federal Rules of Civil Procedure to defer consideration of WMATA's motion until such time as plaintiff obtains affidavits or declarations or takes discovery or, alternatively, to deny the motion. Plaintiff had an opportunity to explain why additional discovery was necessary by indicating the particular facts she intended to discover, explaining why these facts are necessary to the litigation and why she could not produce these facts in her opposition to WMATA's motion, and showing that these facts are

8

Plaintiff's *pro se* status does not relieve her of her obligation to comply with the Federal Rules of Civil Procedure and the local civil rules of this Court. The rules allow for the waiver of initial disclosures, *see* Fed. R. Civ. P. 26(a)(1)(A) and LCvR 16.3(c)(7), and the parties have done so. Although the rules direct the parties to develop a discovery plan, *see* Fed. R. Civ. P. 26(f)(3), LCvR 16.3(d), the Court need not incorporate a discovery plan into its scheduling order. Rather, a scheduling order that merely "limit[s] the time to join other parties, amend the pleadings, complete discovery and file motions," Fed. R. Civ. P. 16(b)(3), is sufficient. The October 1, 2012 scheduling order meets the requirements of Rule 16(b)(3), and it is subject to modification "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiff has not shown good cause to modify the scheduling order and at this late date the Court would not consent to a modification.

Plaintiff had ample opportunity to meet and confer with opposing counsel before submitting their joint status report. The Court directed that this opportunity be provided to the Plaintiff after she failed to appear for the initial scheduling conference, following which the Court ordered that the parties meet and confer and submit a Joint Meet & Confer Statement. Minute Entry, September 7, 2012. Plaintiff could and should have used that opportunity to confer about any of the topics that may be included in a discovery plan under Fed. R. Civ. P. 26(f)(3). The report submitted to the Court on September 17, 2012 reflected that Plaintiff took no position with respect to initial disclosures and discovery. Plaintiff's position – or lack thereof – in no way controlled the content of or undermined the validity of the scheduling order. Plaintiff's failure to

---

indeed discoverable. She did not make an adequate showing, and her Rule 56(d) motion is denied.

avail herself of the opportunity to obtain discovery from WMATA before the deadline set in the scheduling order is a problem of Plaintiff's own making. Her motions for discovery are denied.

*B. Plaintiff's Title VII Claim is Untimely*

Before bringing an employment discrimination action under Title VII in federal district court, a plaintiff first must have exhausted her administrative remedies by filing a charge of discrimination with the EEOC. *See, e.g., Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012); *Greggs v. Autism Speaks, Inc.*, __ F. Supp. 2d __, __, 2013 WL 1297223, at *3 (D.D.C. Mar. 20, 2013); *see also Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (characterizing "a timely administrative charge [as] a prerequisite to initiation of a Title VII action in the District Court"). If the EEOC dismisses a charge of discrimination, it "shall so notify the person aggrieved[,] and within ninety days after the giving of such notice," she may file a civil action in federal district court. 42 U.S.C. § 2000e-5(f)(1); *see Griffin v. Acacia Life Ins. Co.,* 151 F. Supp. 2d 78, 80 (D.D.C. 2001) ("A person aggrieved under Title VII who seeks to file a civil action must do so within ninety days from receipt of the EEOC right-to-sue notice."). Absent any indication to the contrary, it is presumed that the right-to-sue notice is mailed on the same date of its issuance, and that a claimant receives it within three days. *See generally Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 299 (D.D.C. 2013) (citations omitted). Thus, in the typical case a plaintiff has 93 days from the date the EEOC issues a right-to-sue notice to file a lawsuit in federal court. *See Coleman v. Potomac Elec. Power Co.,* 310 F. Supp. 2d 154, 158 (D.D.C. 2004). "The mere fact that a plaintiff is representing herself 'does not render [her] immune from the ninety-day requirement.'" *Horsey v. Harris*, __ F. Supp. 2d __,

\_\_, 2013 WL 3649790, at *5 (D.D.C. July 16, 2013) (quoting *Anderson v. Local 201 Reinforcing Rodmen,* 886 F. Supp. 94, 97 (D.D.C. 1995)) (other citation omitted).

In this case, it is presumed that Plaintiff received the right-to-sue notice on or about November 19, 2011, three calendar days after issuance of the notice on November 16, 2011. WMATA argues that Plaintiff's complaint should have been filed on or about February 17, 2012, or ninety days after her receipt of the right-to-sue notice. *See* Def.'s Mem. at 4. Plaintiff claims to be "a victim of crimes against humanity," such that her "failure to file suite [sic] within 90 days of receipt of the right-to-sue letter" should be excused because she "was in fear [for] her life and reasonably believe[d] that [she was] in danger of being killed or seriously injured as a result of the criminal acts that had [befallen her] (which led to [her] fleeing [her] place of residence on multiple instances) by order of . . . WMATA . . . ." Pl.'s Mem. at 4. For example, Plaintiff alleges that she was "followed and intimidated on several occasions by Transit police" in October and November 2011. Am. Compl. at 4. During this same timeframe, on October 29, 2011, Plaintiff also alleges that she "was . . . approached by a WMATA employee disguised as a bystander with the intent to discourage [her] from filing suit with threats at the L'Enfant Plaza Station." *Id.* "Around the same time," plaintiff states, "unfamiliar and dangerous criminals were prowling around [her] place of residence," entering her apartment, watching her as she "left and returned from work, [and] gesturing a threatening look with the intent to cause battery." *Id*. at 5. She further alleges that her "privacy through various forms of communication were invaded" when unauthorized persons opened her mail, recorded her telephone calls, "electronically wired [her] current place of residence . . . with [a] surveillance camera and other means necessary to eavesdrop and invade on personal affairs in an attempt to slander and humiliate, and/or continue conspiracy attacks, hacked her email accounts, and installed a tracking device on her car. *Id*. at

11

6-7. Plaintiff contends not only that "random strangers were climbing through the fence banging on [her] window," *id.* at 7, but also that "seeked [sic] safety" by moving to the homes of relatives, *id.* at 8-9. While these events may have placed Plaintiff's "life . . . in total chaos" and made her "a victim of intentional war crimes against humanity as well as domestic terrorism," *id.* at 10, Plaintiff proffers no credible explanation for her failure to file her complaint timely.

Plaintiff filed her original complaint on June 29, 2012, more than four months after the 90-day limitation period expired. Thus, she failed to file her complaint within the 90-day limitation period and it must therefore be dismissed. *See Olatunji v. District of Columbia*, __ F. Supp. 2d __, __, 2013 WL 3766905, at *3 (D.D.C. July 19, 2013) (dismissing Title VII claim filed four days after 90-day period ran).

### C. Plaintiff Fails to Rebut WMATA's Proffered Legitimate, Non-Discriminatory Reason for Terminating Her Employment

An employer may not discriminate against an employee because of the employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Title VII's anti-retaliation provision further prohibits employer actions that discriminate against an employee because the employee has 'made a charge, testified, assisted, or participated in any manner' in a Title VII 'investigation, proceeding, or hearing.'" *Geleta v. Gray,* 645 F.3d 408, 411 (D.C. Cir. 2011) (quoting 42 U.S.C. § 2000e-3(a)). "To make out a prima facie case of retaliation, a plaintiff must show '(1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Id.* (quoting *Gaujacq v. EDF, Inc.,* 601 F.3d 565, 577 (D.C. Cir. 2010)). On summary judgment, however, Plaintiff's ability to make out a prima facie case of retaliation is of little importance. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("[T]he prima facie case is a

largely unnecessary sideshow."). Where, as here, WMATA asserts a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment, the Court's inquiry is limited "to whether a reasonable jury could infer . . . retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (internal quotation marks and citation omitted).

Plaintiff's October 17, 2011 charge of discrimination indicates that her claim is based on retaliation, yet neither the original complaint nor the amended complaint clearly alleges facts to support a retaliation claim. It is not apparent that WMATA retaliated against Plaintiff for having engaged in statutorily protected activity, or that she suffered an adverse employment action because of any such protected activity. Plaintiff's June 18, 2012 charge of discrimination, however, suggests that the retaliation claim is based on prior protected activity (the filing of the October 17, 2011 charge of discrimination) and that she suffered adverse actions (principally her termination) as a result of this activity. For purposes of this Memorandum Opinion, the Court presumes without deciding that Plaintiff adequately states a retaliation claim.[5]

WMATA terminated Plaintiff's employment "for her failure to comply with the directives of the Medical Services office," without regard to plaintiff's October 17, 2011 charge of discrimination with the EEOC. Harrington Aff. ¶ 6. Plaintiff deemed this assertion false, positing that "WMATA had no reason to terminate [her]" for any reasons other than those

---

[5] Insofar as Plaintiff's retaliation claim arises from any delay or interference with the processing of her charge of discrimination, the claim must fail. *Ramseur v. Perez*, __ F. Supp. 2d __, __, 2013 WL 4483511, at *6 (D.D.C. Aug. 23, 2013) (finding that retaliation claim arising from employer's alleged "fail[ure] to comply with EEOC procedures and twice delaying the investigative process" is not cognizable under Title VII).

"presented throughout this litigation associated with charges filed with the EEOC." Pl.'s Mem. at 10. In support of her claim, plaintiff has attached a copy of the Final Order of the District of Columbia Office of Administrative Hearings, which order concluded that the Plaintiff was not terminated for a reason resulting in her disqualification from receiving unemployment compensation benefits. *See generally id.*, Ex. F at 4-7.

Plaintiff's burden on summary judgment is to establish the existence of a genuine issue of material fact in dispute as to the reason for her termination. Whether Plaintiff committed misconduct for purposes of her claim for unemployment benefits is not probative of WMATA's alleged retaliatory motive. Plaintiff points to no materials in the record to show that WMATA's proffered legitimate, nondiscriminatory reason for terminating her employment is a pretext for retaliation.

### III. CONCLUSION

The Court concludes that Plaintiff's complaint is untimely filed. Even if Plaintiff had filed her complaint within the requisite 90-day limitation period, she presented no evidence from which a reasonable jury could infer retaliation. Accordingly, the Court will grant WMATA's motion. An Order accompanies this Memorandum Opinion.

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

DATE: October 8, 2013